MARCY C. ENGLE, Appellant, v. PERRY ENGLE, Appellee.

**Divorce:** ADULTERY: PROCURING OF EVIDENCE: CONNIVANCE. Either a husband or wife, having reason to believe the other guilty of adulterous relations with a stranger, may take measures to secure evidence of that fact without being guilty of either connivance or consent to the wrongful act. In this case the plaintiff's acts in securing evidence of the adulterous relations of the defendant with another were not such as to bar her right to a divorce on that ground.

*Appeal from Jasper District Court.*—HON. K. E. WILCOCKSON, Judge.

THURSDAY, DECEMBER 14, 1911.

SUIT in equity for a divorce. Decree dismissing plaintiff's petition, and she appeals.—*Reversed* and *remanded*.

*E. J. Salmon* and *E. M. S. McLaughlin*, for appellant.

*J. C. Hawkins*, for appellee.

DEEMER, J.—Plaintiff and defendant were married at Des Moines, Iowa, April 12, 1905, and they lived together as husband and wife down to October 10, 1908. They had each been married before, and at the time of trial plaintiff was fifty-four and defendant something like seventy-two years of age. Defendant is a physician and surgeon, and has been engaged in the practice of his profession something like forty years. So far as shown, the parties lived happily together until plaintiff discovered, as she thought, defendant's infidelity and breach of his marriage vows. Becoming suspicious of defendant, she employed a detective to watch him, and through his efforts discovered such proof of defendant's faithlessness that she left him, and brought this action for divorce based wholly upon the ground of adultery. Thereafter defendant brought action against plaintiff for a divorce based upon the ground of cruel and inhuman treatment. In this action plaintiff filed an answer and cross-petition; in the latter she asked for a divorce from the plaintiff, the defendant herein, upon the same grounds as in her original petition. When the original case was reached for trial, the two actions were consolidated and tried together, resulting in a decree dismissing each petition, and plaintiff's cross-petition to defendant's petition in the second action, and taxing the costs in each action to the plaintiff therein. Plaintiff in the original action and defendant in the second suit appeals. The defendant in this action seems to have been content with the decree below, for he did not appeal. The only question for our consideration is the sufficiency of the testimony to establish the allegations of plaintiff's petition wherein she charges that defendant committed adultery with the woman named as corespondent.

This woman is an unmarried woman, something like forty years of age at the time of the trial. That she was something more than defendant's patient is abundantly established by the testimony, and we are constrained to

hold that plaintiff has established by a fair preponderance of the testimony the charges made by her as a ground for divorce. We might, perhaps, accept defendant's explanation of all matters charged against him, except what is known in the record as the "haymow" transaction. As to that, the testimony is overwhelmingly against him, and the most of it comes from apparently respectable and trustworthy witnesses. The explanation of this as given by the defendant and the corespondent is not entirely consistent; and to our minds entirely inadequate and contrary to all human experience. It is true that plaintiff, having had her suspicions aroused, deliberately planned to catch the parties in *flagrante delicto*. This she did by adopting the usual ruse of going away from home, yet remaining near at hand, and keeping watch over the defendant and his paramour. The scheme seems to have been so successful that thereafter defendant never returned to his home after the incident related by the witnesses, except on one occasion, when, with some other parties, he came to take away some of his personal belongings. Defendant not only denies that he ever committed adultery, but he alleges that, if he did, plaintiff consented thereto, and is not entitled to make complaint thereof. These positions are manifestly inconsistent. One or the other can not in the nature of things be true.

Having found that defendant is guilty of the charge made against him, it is permissible, however, for the claim to be made on his behalf that the plaintiff either consented to the wrong or so connived at bringing it about that she can not complain. *May v. May,* 108 Iowa, 1. But something more than maintaining a watch or hiring others to do so is necessary to establish either connivance or consent. *Robbins v. Robbins,* 140 Mass. 528; *Cairns v. Cairns,* 109 Mass. 408; *Cochran v. Cochran,* 35 Iowa, 477.

If either husband or wife suspects the other of having adulterous relations with a stranger, he or she may take

measures to secure proof to be used in an action for divorce without being guilty of connivance. *Wilson v. Wilson,* 154 Mass. 194 (28 N. E. 167, 12 L. R. A. 524, 26 Am. St. Rep. 237).

No such connivance is shown as to justify a court in denying plaintiff a divorce. It is enough to state our conclusions without quoting from the testimony upon which they are based. To set out the evidence at length would be to reproduce and make of record a history of marital perfidy which had better be forgotten. To embalm it on the pages of our reports would be of no benefit either to the parties directly concerned or to the general public. It is enough to say that to our minds the plaintiff has clearly made out her case, and, if the circumstances are to be believed, there is no escape from the conclusion that defendant had not only the disposition and the opportunity, but that he in fact was guilty of adultery with the woman named as his paramour. We do not overlook the fact that the trial court refused the divorce. But we have no means for knowing why this result was reached. It may have been under a misapprehension as to the law; but, however this may be, we can not overlook the testimony which tends more strongly to establish adultery than in many cases heretofore before this court in which divorces upon that ground have been rendered. See, among others, *Names v. Names,* 67 Iowa, 383; *Carlisle v. Carlisle,* 99 Iowa, 247; *Inskeep v. Inskeep,* 5 Iowa, 204.

The decree must be reversed, and the cause remanded for one in harmony with this opinion.—*Reversed* and *remanded.*